PEARSON, J.

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| HANDEL'S ENTERPRISES, INC., | ) | |
| | ) | CASE NO. 4:18CV508 |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | JUDGE BENITA Y. PEARSON |
| | ) | |
| KENNETH S. SCHULENBURG, *et al.*, | ) | |
| | ) | |
| | ) | **MEMORANDUM OF OPINION AND** |
| Defendants. | ) | **ORDER** [Resolving ECF No. 3] |

Pending before the Court is Plaintiff Handel's Enterprises, Inc.'s Motion for Preliminary Injunction. ECF No. 3. Defendants Kenneth S. Schulenburg, Juliana Ortiz, and Moonlight101, Inc. have filed a response in opposition. ECF Nos. 25 and 26. Plaintiff replied. ECF No. 27. The Court has been advised, having reviewed the record and heard oral argument. For the reasons that follow, the Court grants Plaintiff's motion (ECF No. 3).[1]

## I. Background

This action arises out of a franchise relationship between Plaintiff Handel's Enterprises, Inc. ("Handel's") and Defendants Kenneth S. Schulenburg, Juliana Ortiz, and Moonlight101, Inc. (collectively "Defendants"). ECF No. 1. Handel's was founded in 1945 and is a franchisor in the ice cream industry with forty-one locations in nine states, including company-owned and

---

[1] Handel's Supplemental Authority in Support of Motion for Preliminary Injunction (ECF No. 38) and Defendants' Reply and Objections to Supplemental Authority in Support of Motion for Preliminary Injunction (ECF No. 39) are stricken and not considered in this ruling.

(4:18CV508)

franchise locations. *Id.* at PageID#: 6, ¶ 21. Handel's uses products, equipment, methods operating manuals, suppliers, and recipes exclusive to Handel's in furtherance of its tradition of excellence and to distinguish itself from its competitors in the ice cream industry. *Id.* at ¶ 23.

On October 14, 2015, Defendant Schulenburg met with Handel's in Ohio to discuss the possibility of purchasing a Handel's franchise in the San Diego, California area. *Id.* at PageID#: 7, ¶¶ 24—26. During the meeting, Handel's provided Defendant Schulenburg with certain franchise disclosures, including a proposed Franchise Disclosure Document ("FDD") that was registered with the California Department of Business Oversight with an effective date of April 13, 2015. *Id.* at ¶ 25. The FDD includes a Unit Franchise Agreement (the "Franchise Agreement") that governs the terms of the parties' franchisor-franchisee relationship. *Id*. Defendant Schulenburg signed the FDD at the October 14, 2015 meeting. *Id.* at ¶ 26.

Under the Franchise Agreement, Defendant Schulenburg was assigned a three-mile radius surrounding the Lofts at Moonlight Beach in Encintas, California, and was also awarded the option to open a second franchise location in the Gaslamp Quarter of downtown San Diego. *Id.* at PageID#: 8, ¶ 29. On or about January 22, 2016, Plaintiff and Defendant Schulenburg executed the Franchise Agreement, commenced a five year initial term, and opened the Encinitas Franchise. *Id.* at PageID#: 8, ¶ 30. In executing the Franchise Agreement, Defendant Schulenburg agreed to "maintain the absolute confidentiality" of Handel's trade secret information, and to not compete with Handel's "both during the time that he is a franchisee and for a period of two years following the termination of the Agreement. ECF No. 3-1 at PageID#: 318—19. Defendant Schulenburg attended a two-week Handel's training in Ohio, at which

(4:18CV508)

Handel's provided Defendant with confidential information pertaining to its operations. ECF No. 1 at PageID#: 8, ¶ 32. Similarly, in early 2016, Defendant Ortiz traveled to Ohio to attend Handel's mandatory franchise training. ECF No. 26-2 at PageID#: 884,¶ 4.

In mid-2017, Defendant Schulenburg began to discuss the development of his second Handel's location in San Diego, California, and chose a location at 425 Market Street, San Diego, California, which is in an area known as the Gaslamp Quarter (the "Gaslamp location"). ECF No. 3-1 at PageID#: 320. Handel's did not approve the development of a Handel's franchise at this location. *Id*. In December 2017, Defendant Schulenburg informed Handel's that he did not believe that paying a franchise fee for the Gaslamp location was logical. *Id*. at PageID#: 323. As such, Defendant Schulenburg refused to provide Handel's with both a copy of the final lease for the Gaslamp location or pay the franchise fee. *Id*. On December 15, 2017, Handel's sent Defendants a notice of breach, informing Defendants of their failure to provide the executed lease to Handel's and to pay the required franchise fee, as required under the Franchise Agreement. ECF No. 3-2 at PageID#: 387. On December 26, 2017, Defendants informed Handel's that they "agreed to sign off on the locations but want[] to do so in person," thus, Defendants would look "at flights to Cleveland in Jan week 1 and 2 [of 2018]." ECF No. 27-4 at PageID#: 972.

Despite these representations, on January 30, 2018, Defendants filed an action in California state court (the "California action"). ECF No. 3-1 at PageID#: 324. Under the California action, Defendants sought relief from Handel's alleged violation of California franchise law—Handel's allegedly presented and had Defendant Schulenburg sign an

3

(4:18CV508)

unauthorized FDD that was not yet approved by the California Department of Business Oversight.² *See* ECF No. 23-6. The California action was removed to the United States District Court for the Southern District of California, Case No. 3:18-CV-00513 GPC WVG. *Id*.

Handel's initiated the instant action against Defendants on March 5, 2018 and contemporaneously sought a preliminary injunction. ECF Nos. 1 and 3. The Verified Complaint asserts claims for federal trademark infringement, federal trademark dilution, federal false designation of origin, unfair competition, breach of contract, misappropriation of trade secrets, fraud, fraudulent concealment, conversion, declaratory judgment, and tortious interference. ECF No. 1. Handel's seeks a preliminary injunction against Defendants for the misappropriation of trade secrets and breach of the parties' Franchise Agreement, which includes a non-compete covenant. ECF No. 3. Defendants assert that they continue to operate the Encinitas Franchise under the terms of the Franchise Agreement, and intend to operate the Gaslamp location independent of Handel's. ECF No. 26 at PageID#: 860. Defendants also assert that the Gaslamp location will be opened by June 8, 2018.³ *Id*. at PageID#: 867.

After notice to the parties, the Court held a hearing on the motion for preliminary injunction on May 9, 2018. ECF No. 19. Having been advised by a review of the record,

---

² On June 18, 2018, Handel's filed a Notice of Decision informing the Court that the United States District Court for the Southern District of California granted Handel's motion to dismiss the California action with leave to amend. ECF No. 40.

³ During the Hearing on Handel's motion for preliminary injunction, Defendants informed the Court that their independent ice cream store, Cali Cream Homemade Ice Cream, was already open for business.

4

(4:18CV508)

applicable law, and oral advocacy, including the presentation of evidence, the Court grants Handel's motion for preliminary injunction (ECF No. 3).

## II. Law and Analysis

Fed. R. Civ. P. 65 requires the Court to balance four factors when determining whether a preliminary injunction should issue. The factors are: (1) likelihood of success on the merits; (2) irreparable harm absent injunctive relief; (3) substantial harm to others from the proposed injunction; and (4) the broader public interest. *Nat'l Credit Union Admin. Bd. v. Jurcevic*, 867 F.3d 616, 622 (6th Cir. 2017). These four considerations are "factors to be balanced, not prerequisites that must be met." *Certified Restoration Dry Cleaning Network, L.L.C. v. Tenke Corp.*, 511 F.3d 535, 542 (6th Cir. 2007) (quoting *Jones v. City of Monroe*, 341 F.3d 474, 476 (6th Cir. 2003), *abrogated on other grounds by Anderson v. City of Blue Ash*, 798 F.3d 338 (6th Cir. 2015)). "The district judge 'is not required to make specific findings concerning each of the four factors used in determining a motion for preliminary injunction if fewer factors are dispositive of the issue.'" *Id*. "Although no one factor is controlling, a finding that there is simply no likelihood of success on the merits is usually fatal." *Gonzales v. Nat'l Bd. of Med. Exam'rs*, 225 F.3d 620, 625 (6th Cir. 2000).

In balancing the four considerations applicable to preliminary injunctions, the Court finds that equitable relief is appropriate.

(4:18CV508)

### A. Likelihood of Success on the Merits

Handel's maintains that it is likely to succeed on the merits of the action against Defendants for the breach of the Franchise Agreement because Defendants misappropriated Handel's trade secrets and violated the terms of the Agreement, which included a non-compete covenant. ECF No. 3-1 at PageID#: 325—327. The Franchise Agreement is governed by Ohio law. ECF No. 1-3 at PageID#: 266 ("This Agreement will be construed in accordance with and governed by the laws of the state of Ohio."). Therefore, the evaluation of the Franchise Agreement is guided by Ohio law.[4]

### 1. Misappropriation of Trade Secrets

Under the Ohio Uniform Trade Secrets Act, Ohio Revised Code §§ 1333.61—.69 ("UTSA"), "[a]ctual or threatened misappropriation may be enjoined." O.R.C. § 1333.62(A). To maintain its misappropriation claim, Handel's must establish by a preponderance of the evidence: (1) the existence of a trade secret; (2) the acquisition of a trade secret as a result of a confidential relationship; and (3) the unauthorized use of a trade secret. *Heartland Home Fin., Inc. v. Allied Home Mortg. Capital Corp.*, 258 F. App'x 860, 861 (6th Cir. Jan. 7, 2008) (citing *Hoover Transp. Serv., Inc. v. Frye*, 77 F. App'x 776, 782 (6th Cir. Sept. 12, 2003) (per curiam)). A trade secret is "information" that "derives independent economic value, actual or potential, from not being generally known to, and not being readily ascertainable by proper means by, other persons

---

[4] Despite disagreeing that Ohio law controls, Defendants only analyze the Franchise Agreement under Ohio law. *See* ECF No. 26 at PageID#: 863—67.

6

(4:18CV508)

who can obtain economic value from its disclosure or use" and is the subject of reasonable efforts to maintain its secrecy. O.R.C. § 1333.61(D).

Defendants assert that Handel's has failed to adequately plead this claim. In particular, Defendants argue that "Plaintiff failed to identify with specificity the documents or specific material it alleges contains confidential information that was misappropriated." ECF No. 26 at PageID#: 864. Defendants also contend that "even if the Agreement is enforceable, and the parties identified specific information as 'trade secrets,'" Plaintiff's allegations are insufficient "to prove that its alleged trade secrets fall within the definition set forth in Ohio Rev. Code Ann. § 1333.61(D)." Id.

Defendants' arguments are unavailing. Contrary to Defendants' assertions, Handel's Verified Complaint alleges significant information concerning its trade secrets. The Complaint identifies Handel's "Confidential Operations Manual." ECF Nos. 1 at PageID#: 8—9, ¶¶ 32—33; 1-3 at PageID#: 254. The Confidential Operations Manual "contains the 'specifications, standards, and procedures' for operating a Handel's franchise." ECF Nos. 1 at PageID#: 8—9, ¶¶ 32—33; 1-3 at PageID#: 254. The Franchise Agreement, attached to the Complaint, further describes Handel's confidential information as including the "total knowledge of [Handel's] System, and construction, operation, and promotion" of the Handel's franchise, something Defendants only became aware of through their interactions with Handel's. ECF No. 1 at PageID#: 8—9, ¶¶ 32—33. That interaction included in-person training at Handel's headquarters in Ohio. Id.; ECF No. 26-2 at PageID#: 884, ¶ 4. The "System" that Handel's seeks to protect is

7

(4:18CV508)

its system for the establishment and operation of its business—information in the Confidential Operations Manual, and information of its "formulas, compilations, methods, techniques, and processes," all exclusive to Handel's. ECF No. 1 at PageID#: 10, ¶ 37. The Franchise Agreement requires that franchisees take steps to protect Handel's confidential information by "'maintain[ing] the absolute confidentiality' of that information and not use it for 'any other business.'" ECF Nos. 1 at PageID#: 9, ¶ 33; 1-1 at PageID#: 132. That Defendants had access to this information through their business relationship with Handel's—and not other means—places this information under the UTSA.

Moreover, as described above, Handel's took precautions to secure the confidential information by requiring that Defendant Schulenburg sign the Franchise Agreement guaranteeing that he would perform and observe the covenants and conditions of the Agreement. ECF No. 1 at PageID#: 8. This measure indicates that the information shared by Handel's was restricted in accordance to the business relationship. Defendants, therefore, as franchisees, had a responsibility to maintain the confidentiality of the information.

Accordingly, Handel's has demonstrated that its alleged trade secrets are included in categories of protected information under the UTSA, and that Handel's has taken the necessary steps to maintain the secrecy of its trade secrets. *See, e.g.,* Novak v. Farneman, 2010 WL 4643002, at *3—*5 (S.D. Ohio Nov. 9, 2010) (noting that the existence of an executed agreement containing non-disclosure or confidentiality provisions is also a factor for a court to consider in its determination of whether the information is entitled to trade secret status).

(4:18CV508)

Handel's has presented a strong likelihood of success on the merits of its claim for the misappropriation of trade secrets.

### 2. Non-Compete Covenant

The parties' Franchise Agreement contains the following non-compete clauses:

5.07. <u>Management/Conflicting and Competing Interests</u>  You, or your designated manager who has successfully completed our training program, must personally supervise the Business at all times.  You covenant and agree that you will always faithfully and diligently perform your obligations under this Agreement, and continuously exert your best efforts to promote and enhance the Business.

You agree that during the initial term of the Agreement you will not directly, indirectly, or in any matter whatever, be involved with any business which is *competitive with, or similar to ours, in any way*.

16.05  <u>Covenant Not to Compete Following Termination of the Agreement</u>  You acknowledge and agree that Handel's name, business reputation, methods and techniques, and the experience you have derived from them, are of considerable value.  In consideration of this fact, if the Agreement terminates or expires for any reason whatsoever, the franchisee and the principal jointly and severally covenant and agree, that neither of them will without the prior written consent of Handel's, at any time during the period ending 2 years after the date of such expiration or termination, directly or indirectly or in any manner whatsoever or through any person, or be in any way associated with any business involving the sale of ice cream or frozen dairy and related products and services:

(a)   in the Territory; or

(b)   within 2 miles of any Handel's franchised or company-owned store then forming a part of the System.

ECF No. 1-3 at PageID#: 255; PageID#: 260 (emphasis added).

(4:18CV508)

In evaluating the reasonableness of a non-compete covenant, Ohio courts generally consider whether the agreement: (1) goes no further than necessary to protect the legitimate interest of an employer; (2) does not impose undue hardships on the employee; and (3) is not injurious to the public. *FirstEnergy Sol. Corp. v. Flerick*, 521 F. App'x 521, 527 (6th Cir. Apr. 15, 2013) (citing *Raimonde v. Van Vlerah*, 42 Ohio St.2d 21, 25, 325 N.E.2d 544, 547 (1975)).

Defendants dispute the reasonableness of the non-compete covenant included in the Franchise Agreement. ECF No. 26 at PageID#: 865—66. Specifically, Defendants contend that the non-compete covenant is "overbroad" and "does not restrict Defendants from operating a competing business agnostic of Plaintiff, unless Plaintiff can identify a protect[a]ble trade secret that Defendants would use." *Id.* at PageID#: 866.

As an initial matter, the Court has found that Handel's has identified trade secrets, as required under a misappropriation claim, so Defendants' argument fails in this regard.

Furthermore, the terms of the non-compete covenant in the Franchise Agreement are not overbroad. The Franchise Agreement restricts Defendants from competing with Handel's within the geographic market area—in which Defendants are responsible for operating a Handel's franchise—during the term of the Franchise Agreement with Handel's, and for a period of two years from the termination of the Franchise Agreement. ECF No. 1-3 at PageID#: 255; PageID#: 260. It is undisputed that Defendant Schulenburg was awarded the Encinitas Franchise and "an additional area in the Gas Lamp district" for the sole purpose of opening a Handel's franchise. ECF Nos. 3-1 at PageID#: 315; 26 at PageID#: 866. Accordingly, Defendants specifically held

10

(4:18CV508)

responsibility for Handel's Encinita and Gaslamp district franchise locations, and breached the Franchise Agreement by opening an independent ice cream store within the exclusive territory that the parties agreed would be the location for the Gaslamp Handel's franchise.  ECF Nos. 3-1 at PageID#: 320—21; 1-3 at PageID#: 283.

The Court also finds that the Franchise Agreement is reasonably drawn in terms of its temporal and spatial restrictions.  *See Chicago Title Ins. Corp. v. Magnuson*, 487 F.3d 985, 991—92 (6th Cir. 2007) (noting that additional factors that the court should assess in reviewing the reasonable of a non-compete covenant include "whether the covenant imposes temporal and spatial limitations").  Courts within Ohio have consistently held that non-compete agreements with two-year durations are reasonable and enforceable.  *Id.* at 992 (affirming district court decision that a covenant is reasonable for at least two years); *Life Line Screening of Am., Ltd. v. Calger*, 145 Ohio Misc.2d 6, 19, 881 N.E.2d 932, 942 (2006) (observing that, "[n]umerous Ohio decisions have upheld contracts calling for two-year periods or longer").  Likewise, the geographic restrictions are reasonable.  *See*, *e.g.*, *Try Hours, Inc. v. Douville*, 985 N.E.2d 955 (Ohio Ct. App. 2013) (upholding nationwide covenant not to compete in expedited freight industry); *Blakeman's Valley Office Equip., Inc. v. Bierdeman*, 786 N.E.2d 914 (Ohio Ct. App. 2003) (enforcing covenant not to compete that spanned three counties).  Handel's has a legitimate business interest in protecting confidential and proprietary information such as its "formulas, compilations, methods, techniques, processes," and information in its confidential

11

(4:18CV508)

Operations Manual.  ECF No. 1 at PageID#: 10, ¶ 37.  Given Handel's business interests, such temporal and spatial restrictions, are not unreasonable.

Lastly, the non-compete covenant is not injurious to the public.  There is no indication that the public will be deprived of competitively priced ice cream if Defendants are prohibited from competing with Handel's for the duration of the Agreement and for a short period of time after the Agreement is termed.  See FirstEnergy Sol. Corp., 521 F. App'x at 527  (affirming district court decision that a one-year non-compete covenant, prohibiting the defendant from opening a competing store, was reasonable and would not injure the public).  Therefore, Handel's has shown a likelihood of success on the merits for its non-compete claim.

Accordingly, the first factor soundly weighs in Handel's favor.

### 2. Irreparable Injury

Given the nature of Handel's misappropriation of trade secrets and non-compete claims, Handel's has made a strong showing that it will suffer irreparable harm if an injunction is not issued. Certified Restoration, 511 F.3d at 550.  Market confusion along with the loss of fair competition and damage to relationships with other franchisees that result from the breach of a non-compete agreement are patent here and the kinds of injuries for which monetary damages are difficult to calculate.  See id. (finding irreparable harm as a result of breach of franchise agreement's non-compete clause).  Furthermore, the Sixth Circuit has found the loss of good will from existing and prospective customers to be irreparable. Id.; see also Mich. Bell Tel. Co. v. Engler, 257 F.3d 587, 599 (6th Cir.2001) ("[L]oss of established goodwill may irreparably harm

(4:18CV508)

a company."); *Basicomputer Corp. v. Scott*, 973 F.2d 507, 512 (6th Cir. 1992) ("The loss of customer goodwill often amounts to irreparable injury because the damages flowing from such losses are difficult to compute.").

This factor, therefore, weighs in favor of enjoining Defendants.

### 3. Substantial Harm to Others

Next, the Court must determine whether the injunction would cause harm to others. In consideration of this factor, the court must also consider the harm that may be inflicted upon the defendant by the issuance of the preliminary injunction. *See*, *e.g.*, *Lorillard Tobacco Co. v. Amouri's Grand Foods, Inc.*, 453 F.3d 377, 382 (6th Cir. 2006). "But neither this nor any single preliminary-injunction factor is dispositive." *Brake Parts, Inc. v. Lewis*, 443 F. App'x 27, 33 (6th Cir. Aug. 11, 2011). The court "must thus grant or deny an injunction as the balance of the equities requires, even though its decision may place one party in financial peril." *Id.*; *see*, *e.g.*, *Blue Cross & Blue Shield Mut. of Ohio v. Blue Cross & Blue Shield Ass'n*, 110 F.3d 318, 333—34 (6th Cir. 1997) (discounting the harm to the non-movant when the movant demonstrated a strong likelihood of success on the merits of its underlying claim).

Defendants contend that if the Court grants injunctive relief, "the restraint would cause an undue hardship on Defendants because they are bound by a lease and have invested substantial efforts and resources into opening the second location [Gaslamp location] by June 2018." ECF No. 26 at PageID#: 867. As noted earlier, during the preliminary injunction hearing, Defendants

13

(4:18CV508)

informed the Court that their independent ice cream store—Cali Cream Homemade Ice Cream—was already open for business.

Self-inflicted harm to Defendants resulting from enforcement of the terms in a franchise agreement that includes a non-compete covenant does not excuse their actions. *See Petland, Inc. v. Hendrix*, 2004 WL 3406089, at * 8 (S.D. Ohio Sept. 14, 2004) (granting the plaintiff's preliminary injunction and explaining that the defendants cannot shield themselves from injunctive relief by pointing to harm that will befall others as a result of their own misconduct). *See also Dealer Specialties, Inc. v. Car Data 24/7, Inc.*, 2016 WL 5341797, *8 (S.D. Ohio Sept. 23, 2016) ("While [the defendants] may argue that granting this relief would harm their business, [the defendants] may not benefit from their breach of contract.").

Defendants were well aware of the risks associated with opening a competing store, had prior notice of Handel's motion for preliminary injunction—seeking to enjoin Defendants from operating the competing business, yet, did so any way. Defendants "cannot place [themselves] in harms way, and then later claim that an injunction should not issue because of costs it will incur to remedy its own misconduct." *Midwest Guar. Bank v. Guaranty Bank*, 270 F.Supp.2d 900, 924 (E.D. Mich. 2003). Although the Court acknowledges the harm an injunction will potentially inflict on Defendants' employees and the landlord, these harms are the result of Defendants' willful actions and are outweighed by the harm to Handel's and its relationships with other franchisees.

Accordingly, this factor weighs in favor of granting the motion.

(4:18CV508)

### 4. Public Interest Served By Injunction

Finally, the public interest would be served by the issuance of an injunction. "Enforcement of contractual duties is in the public interest." *Certified Restoration*, 511 F.3d at 551. Similarly, preventing unfair competition has traditionally been in the public interest. *Dealer Specialities, Inc.*, 2016 WL 5341797, at *8 (citing *Bierdeman*, 786 N.E.2d at 920).

Therefore, this last factor also weighs in favor of granting the injunctive relief sought.

### 5. Summary

"A preliminary injunction is an extraordinary remedy never awarded as of right." *Sophie G.*, 2017 WL 4150465, at *8 (citing *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 24 (2008)). In balancing the four factors, the Court concludes that all four factors weigh in favor of granting Handel's motion for preliminary injunction.

## III. Security Bond

Fed. R. Civ. P. 65 requires that:

> The court may issue a preliminary injunction or a temporary restraining order only if the movant gives security in an amount that the court considers proper to pay the costs and damages sustained by any party found to have been wrongfully enjoined or restrained.

Fed. R. Civ. P. 65(c).

(4:18CV508)

At the preliminary injunction hearing, Handel's suggested that it could post a bond of $450,000.00 within five days of the issuance of a preliminary injunction order. ECF No. 37 at PageID#: 1098. The bond amount is based on "an amount equal to two (2) years of rent and anticipated profits based upon reasonable profit projections less expenses for the Cali Cream Homemade Ice Cream retail business." *Id.* The Court finds that the amount and terms are appropriate. Pursuant to Fed. R. Civ. P. 65(c), the Court hereby orders Plaintiff Handel's Enterprises, Inc., to post $450,000.00, within five days of the issuance of this Order, as security for the preliminary injunction.

### IV. Conclusion

For the foregoing reasons, Plaintiff's Motion for Preliminary Injunction (ECF No. 3) is granted. The Court hereby adopts Plaintiff's Proposed Order Granting Preliminary Injunction (ECF No. 37), with modification.

IT IS SO ORDERED.

June 22, 2018        */s/ Benita Y. Pearson*
Date        Benita Y. Pearson
       United States District Judge