PEARSON, J.

# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF OHIO
# EASTERN DIVISION

| | |
|---|---|
| HANDEL'S ENTERPRISES, INC., | ) |
| Plaintiff, | ) CASE NO. 4:18CV508 |
| | ) |
| v. | ) JUDGE BENITA Y. PEARSON |
| | ) |
| KENNETH S. SCHULENBURG, *et al.*, | ) |
| | ) **MEMORANDUM OF OPINION AND** |
| Defendants. | ) **ORDER** [Resolving ECF No. 23] |

Pending is Defendants' Motion to Dismiss, Stay, or in the Alternative, to Transfer Venue. ECF No. 23. Plaintiff filed a response in opposition. ECF No. 30. Defendants replied. ECF No. 36. The Court heard oral argument. The Court has been advised, having reviewed the record, including the parties' briefs and applicable law. For the reasons stated below, the motion (ECF No. 23) is denied.

## I. Background

This action arises out of a franchise relationship between Plaintiff Handel's Enterprises, Inc. ("Handel's") and Defendants Kenneth S. Schulenburg, Juliana Ortiz, and Moonlight101, Inc. (collectively "Defendants"). ECF No. 1. Handel's was founded in 1945 and is a franchisor in the ice cream industry with forty-one locations in nine states, including company-owned and franchise locations. *Id.* at PageID#: 6, ¶ 21.

On October 14, 2015, Defendant Schulenburg met with Handel's in Ohio to discuss the possibility of purchasing a Handel's franchise in the San Diego, California area. *Id.* at PageID#:

7, ¶¶ 24—26. During the meeting, Handel's provided Defendant Schulenburg with certain franchise disclosures, including a proposed Franchise Disclosure Document ("FDD") that was registered with the California Department of Business Oversight with an effective date of April 13, 2015. *Id.* at ¶ 25. The FDD contains a Unit Franchise Agreement (the "Franchise Agreement") that governs the terms of the parties' franchisor-franchisee relationship. *Id*. Defendant Schulenburg signed the FDD at the October 14, 2015 meeting. *Id.* at ¶ 26.

Under the Franchise Agreement, Defendant Schulenburg was assigned a three-mile radius surrounding the Lofts at Moonlight Beach in Encintas, California, and was also awarded the option to open a second franchise location in the Gaslamp Quarter of downtown San Diego. *Id. at PageID#: 8*, ¶ 29. On or about January 22, 2016, Handel's and Defendant Schulenburg executed the Franchise Agreement, commenced a five year initial term, and opened the Encinitas Franchise. *Id.* at ¶ 30. Defendant Schulenburg attended a two-week Handel's training in Ohio, at which Handel's provided Schulenburg with confidential information pertaining to its operations. *Id.* at ¶ 32.

In mid-2017, Defendant Schulenburg began to discuss the development of his second Handel's location in San Diego, California, and chose a location at 425 Market Street, San Diego, California, which is in an area known as the Gaslamp Quarter (the "Gaslamp location"). *Id. at PageID#: 21*, ¶ 87. Handel's did not approve the development of a Handel's franchise at this location. *Id.* at ¶ 89. In December 2017, Defendant Schulenburg refused to provide Handel's with both a copy of the final lease for the Gaslamp location and the franchisee fee. *Id. at PageID#: 22*, ¶¶ 92—93. On December 15, 2017, Handel's sent Defendants a notice of

(4:18CV508)

breach, informing Defendants of their failure to provide the executed lease to Handel's and to pay the required franchise fee, as required under the Franchise Agreement. ECF No. 30 at PageID#: 1040. Handel's subsequently engaged Defendants in discussions to resolve matters concerning their failure to pay the franchise fee and to execute all other duties under the Franchise Agreement. ECF No. 1 at PageID#: 12—13.

On January 30, 2018, Defendants filed an action in California state court (the "California action"). ECF No. 30 at PageID#: 1041. Under the California action, Defendants sought relief from Handel's alleged violation of California franchise law—Handel's allegedly presented and had Defendant Schulenburg sign an unauthorized FDD that was not yet approved by the California Department of Business Oversight. ECF No. 23-6. The state action was removed to the United States District Court for the Southern District of California, Case No. 3:18-CV-00513 GPC WVG.[1] Id.

On March 5, 2018, Handel's filed the present action against Defendants. ECF No.1. The Verified Complaint asserts claims for federal trademark infringement, federal trademark dilution, federal false designation of origin, unfair competition, breach of contract, misappropriation of trade secrets, fraud, fraudulent concealment, conversion, declaratory judgment, and tortious interference. ECF No. 1.

On March 27, 2018, Defendants filed the instant motion to dismiss Handel's suit for lack of subject matter jurisdiction and improper venue, or, alternatively, stay, or transfer the case to

---

[1] On June 18, 2018, Handel's filed a Notice of Decision informing the Court that the United States District Court for the Southern District of California granted Handel's motion to dismiss the California action with leave to amend. ECF No. 40.

(4:18CV508)

the Southern District of California. ECF No. 23. After notice to the parties, the Court held a hearing on the motion to dismiss, stay, or transfer venue, on May 9, 2018. ECF No. 19. Having been advised by a review of the record, applicable law, and oral advocacy, including the presentation of evidence, the Court hereby denies the motion (ECF No. 23).

## II. Law and Analysis

### A. Motions to Dismiss

#### 1. Lack of Subject Matter Jurisdiction

Pursuant to Fed. R. Civ. P. 12(b)(1), Defendants moves to dismiss the action for lack of subject matter jurisdiction.

"When the defendant challenges subject matter jurisdiction through a motion to dismiss, the plaintiff bears the burden of establishing jurisdiction." *Hedgepeth v. Tenn.*, 215 F.3d 608, 611 (6th Cir. 2000). "[W]here a defendant argues that the plaintiff has not alleged sufficient facts in her complaint to create subject matter jurisdiction, the trial court takes the allegations in the complaint as true." *Nichols v. Muskingum Coll.*, 318 F.3d 674, 677 (6th Cir.2003).

The Verified Complaint asserts that the Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 1331 and 1332. ECF No. 1 at PageID#: 4, ¶¶ 14—15. § 1331 grants the Court jurisdiction over all claims arising under federal law. § 1332 grants the Court jurisdiction over all claims in which the matter in controversy exceeds $75,000 and is between citizens of different states.

In the present action, there is no dispute that the Verified Complaint asserts claims arising under federal law—"15 U.S.C. § 1121 and 28 U.S.C. § 1338(a) (trademarks), 28 U.S.C. §

4

(4:18CV508)

1338(b) (unfair competition when joined with a substantial and related claim under the Trademark Laws of the United States, 15 U.S.C. § 1051 et seq.), and 28 U.S.C. § 2201(a) (Declaratory Judgment Act)." *Id.* at ¶ 15. Moreover, there is no dispute that the required diversity of citizenship exists in this matter—Handel's is incorporated in Ohio with its principal place of business in Ohio, Defendants Schulenburg and Ortiz are citizens of California, and Defendant Moonlight101, Inc. is incorporated in California, with its principal place of business in California—and, that the amount in controversy exceeds $75,000.00. *Id.* at ¶ 14.

Accordingly, the Court has subject matter jurisdiction over all claims against Defendants. The Court therefore denies Defendants' motion to dismiss for lack of subject matter jurisdiction.

### 2. Improper Venue

Next, Defendants challenge the propriety of venue in the Northern District of Ohio. ECF No. 23-1 at PageID#: 555. The Franchise Agreement at issue in this case contains a forum selection clause designating Ohio as a proper forum for the adjudication of disputes:

> 19.03 Dispute Resolution
>
> The parties agree that the venue of any legal action involving any disputes under this agreement or any transactions concerning it, its inducement of its execution, shall be solely and exclusively in the federal or state courts situated in Mahoning County, Ohio, and Franchisee consents to jurisdiction in Ohio and waives any objections thereto. Should Franchisee hereafter dispute the enforceability of this Section, Franchisor shall be free at its option to litigate against Franchisee in any court of competent jurisdiction.

ECF Nos. 1 at PageID#: 6; 1-1 at PageID#: 141; 1-3 at PageID#: 264.

Defendants contend that venue is improper in Ohio because the Franchise Agreement's forum selection clause is invalid under the California Franchise Relations Act ("CFRA"), which

5

(4:18CV508)

renders void "any provision in a franchise agreement restricting venue to a forum outside this state" when applied to "any claim arising under or relating to a franchise agreement involving a franchise business operating within [the state of California]." Cal. Bus. & Prof. Code § 20040.5. According to Defendants, the CFRA governs in the instant action because Defendants are operating a franchise business in California, subject to California law. ECF Nos. 23-1 at PageID#: 556—57; 36 at PageID#: 1082. Defendants' argument misses the mark.

In the instant case, Handel's brought suit in Ohio, making the relevant inquiry: whether enforcement of the forum selection clause would contravene a strong public policy in Ohio as the forum state. *See M/S Bremen v. Zapata Off-Shore Co.*, 407 U.S. 1, 15, 92 S.Ct. 1907, 32 L.Ed.2d 513 (1972) ("A contractual choice-of-forum clause should be held unenforceable if enforcement would contravene a strong public policy of the forum in which suit is brought, whether declared by statute or by judicial decision."). "Under these circumstances, California law simply does not come into play, and the question of whether enforcement would contravene California policy is not one that the court need consider." *HOODZ Intern., LLC v. Toschiaddi*, 2012 WL 883912, at *4 (E.D. Mich. Mar. 14, 2012) (quoting *TGI Friday's Inc. v. Great Nw. Rests., Inc.*, 652 F.Supp.2d 750, 760 (N.D. Tex. 2009) (determining that § 20040.5 does not make venue in Northern District of Texas improper when franchise agreement at issue "provide[d] that Texas law applies to all matters relating to the agreement, and that Texas is the forum for any disputes relating to the agreement"). *See Atl. Marine Const. Co. v. U.S. Dist. Court for the W. Dist. of Tex.*, ––– U.S. ––––, 134 S.Ct. 568, 577, 187 L.Ed.2d 487 (2013) (holding that whether venue is

(4:18CV508)

improper depends exclusively on whether the court in which the case is brought satisfies the requirements of the federal venue laws, without regard to any forum selection clause).

Rather, Rule 12(b)(3) of the Federal Rules of Civil Procedure provides the proper basis for a party seeking to dismiss an action for improper venue. The federal venue statute states in relevant part as follows:

> (b) A civil action wherein jurisdiction is not founded solely on diversity of citizenship may, except as otherwise provided by law, be brought only in (1) a judicial district where any defendant resides, if all defendants reside in the same State, (2) a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of property that is the subject of the action is situated, or (3) a judicial district in which any defendant may be found, if there is no district in which the action may otherwise be brought.

28 U.S.C. § 1391(b)(2).

Because Defendants do not reside in Ohio and the Southern District of California would presumably provide another available forum for the present action, Handel's must show that venue is proper under § 1391(b)(2).

A plaintiff "may file his complaint in any forum where a substantial part of the events or omissions giving rise to the claim arose; this includes any forum with a substantial connection to the plaintiff's claim." *First of Mich. Corp. v. Bramlet*, 141 F. 3d 260, 263 (6th Cir. 1998). Indeed, venue can be proper in multiple districts, but the statute's substantiality requirement necessitates more than a 'tangential' connection. *Reilly v. Meffe*, 6 F. Supp. 3d 760, 765—66 (S.D. Ohio 2014). Put plainly, the test for proper venue is whether there is a substantial connection between the forum and the plaintiff's claim, not whether it is the only forum with a

7

(4:18CV508)

substantial connection, or whether it is the forum with the most substantial connection to the claim. *See Bramlet*, 141 F.3d at 264.

In the instant case, Defendants have established a sufficient substantial connection to the State of Ohio so as to render venue proper. Defendants met with Handel's in Ohio to discuss the purchase of a Handel's franchise, where they received a copy of Handel's Franchise Disclosure Document for Prospective Franchisees; Defendant Schulenburg and Ortiz attended a Handel's training in Ohio regarding its operations systems; Defendants' payment of royalty and service of fees were sent to Handel's headquarters in Ohio; Defendants repeatedly purchased Handel's supplies and products in Ohio over a twenty-one-month period since the opening of the Encinitas Franchise; Defendants sent sale orders to Handel's in Ohio; Defendants traveled to Ohio to transact business with Handel's and to communicate with Handel's employees regarding Defendants' ice cream franchise even after the alleged breach occurred in December 2017; and, lastly, the effects of the breach were felt in Ohio. ECF Nos. 1 at PageID#: 5, ¶ 17; 30 at PageID#: 1038—39.

Accordingly, because these actions constitute a substantial part of the events giving rise to Handel's claims, venue in Ohio is proper with respect to all Defendants.

The Court therefore denies Defendants' motion to dismiss for improper venue.

(4:18CV508)

### 3. Defendants' Remaining Challenges are Meritless.

#### i. First-to-File Rule

Defendants next argue that, in the alternative, the Court should dismiss or stay the action in deference to the California litigation, under the first-to-file rule. ECF No. 23-1 at PageID#: 559—64.

The first-to-file rule "provides that when actions involving nearly identical parties and issues have been filed in two different district courts, the court in which the first suit was filed should generally proceed to judgment." *Certified Restoration Dry Cleaning Network, LLC v. Tenke Corp.*, 511 F.3d 535, 551 (6th Cir. 2007) (internal quotation marks omitted). The purpose of the rule is to encourage "comity among federal courts of equal rank." *Id.* In considering the application of the rule, the district court looks at the chronology of the actions; the similarity of the parties involved; and the similarity of the issues at stake. *Baatz v. Columbia Gas Transmission, LLC*, 814 F.3d 785, 789 (6th Cir. 2016).

The first-to-file rule is not strictly applied and may be dispensed with when equity so requires. *Certified Restoration*, 511 F.3d at 552. Rare or extraordinary circumstances, inequitable conduct, bad faith, anticipatory suits, or forum shopping weigh against application of the rule. *Id.* If these factors support application of the rule, the court must also evaluate whether equitable considerations weigh against it. *Baatz*, 814 F.3d at 789.

There is no dispute that the California action—although first filed as a state action and subsequently removed—was filed prior to the Ohio action. Furthermore, even though the parties in both actions are nearly identical—difference being that, the Ohio action includes Defendant

(4:18CV508)

Ortiz, who is not a party in the California action, the issues are not. Handel's correctly points out that Defendants' sole claim concerning "Handel's filings with the California Department of Business Oversight," will not resolve the numerous claims in the Ohio action, in which Handel's seeks relief from Defendants' "misuse of Handel's trade secrets and good will, breaches of the Franchise Agreement, and trademark infringement, among other claims." ECF No. 30 at PageID#: 1052. Because the issues raised, in the respective actions, are not substantially similar, the Court finds that the first-to-file rule does not apply.

Even assuming *arguendo* that, the first-to-file rule applies, equity considerations dictate that an exception should be made. On December 15, 2017, Handel's wrote to Defendants and gave notice of their failure to provide the executed lease to Handel's and to pay the required franchise fee, in breach of the Franchise Agreement. ECF No. 30 at PageID#: 1040. Defendants' subsequent pre-lawsuit correspondence was made in response to matters concerning Handel's notice of breach, as Defendants represented to Handel's that they "agreed to sign off on the locations but want[ed] to do so in person." " ECF No. 27-4 at PageID#: 972. Defendants ultimately rejected Handel's offer to resolve the dispute without litigation when they filed the California action on January 30, 2018. ECF No. 23-1 at PageID#: 552. In filing the California action, Defendants were well aware that Plaintiff was willing to litigate if the parties did not reach an agreement. Furthermore, Defendants were also aware that the forum selection clause in the Franchise Agreement mandated that the parties' dispute be resolved in Ohio. *See* ECF No. 1-3 at PageID#: 266. Therefore, the Court finds that Defendants filed the California action as a

(4:18CV508)

preemptive measure. Of course this analysis is now moot. Given the recent dismissal of the California lawsuit, only one lawsuit remains. See ECF No. 40.

For the foregoing reasons, the motion to dismiss or stay the instant action is denied on this ground.

### ii. *Colorado River* Abstention

Next, Defendants argument that the Court should abstain from hearing this case based on the *Colorado River* abstention doctrine fails. ECF No. 23-1 at PageID#: 564—65. According to the doctrine, federal courts may sometimes abstain from hearing a case because an identical or similar case is pending in state court. *Colorado River Water Conservation Dist. v. United States,* 424 U.S. 800, 818—19, 96 S.Ct. 1236, 1246—47, 47 L.Ed.2d 483 (1976). Because the California action has been removed, there is no concurrent state action, thus, the *Colorado River* doctrine is not applicable.

### iii. Declaratory Judgment

Lastly, Defendants assert that the "litigation is merely a veiled attempt to bring a cause of action for declaratory relief," and, therefore, the action should be dismissed because Handel's fails to assert a declaratory judgment claim. ECF No. 23-1 at PageID#: 567. The Court finds that Defendants' argument fails.

Handel's 13-count complaint that includes, a declaratory judgment claim, along with other substantive claims for breach of contract, trademark infringement, trademark dilution, false designation of origin, conversion, and fraud, cannot be said to be a mere cover up for one claim. A declaratory judgment claim can be accompanied by other forms of requested relief. Therefore,

11

(4:18CV508)

the Court need not further address this issue, and the motion to dismiss is also denied on this ground.

Overall, the Court denies Defendants' motions to dismiss, or otherwise stay the action.

**B. Motion to Transfer Venue**

Defendants alternatively move, pursuant to 28 U.S.C. § 1404(a), for transfer to the Southern District of California, on grounds that it is a more convenient venue. ECF No. 23-1 at PageID#: 570.

Section 1404(a) provides that "[f]or the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought." 28 U.S.C. § 1404(a). The district court has broad discretion to grant or deny a § 1404(a) motion to transfer. *Phelps v. McClellan*, 30 F.3d 658, 663 (6th Cir. 1994) (internal quote and citation omitted). The Sixth Circuit requires "a district court [to] consider the private interests of the parties, including their convenience and the convenience of potential witnesses, as well as other public-interest concerns, such as systemic integrity and fairness, which come under the rubric of 'interests of justice.'" *Moses v. Bus. Card Express, Inc.*, 929 F.2d 1131, 1137 (6th Cir.1991) (quoting *Stewart Org., Inc. v. Ricoh Corp.*, 487 U.S. 22, 30, 108 S.Ct. 2239, 101 L.Ed.2d 22 (1988)). A defendant requesting a transfer of venue, bears a heavy burden in opposing the plaintiff's chosen forum. *Sinochem Intern. Co. Ltd. v. Malaysia Intern. Shipping Corp.*, 549 U.S. 422, 430, 127 S.Ct. 1184, 1190, 167 L.Ed.2d 15 (2007). "[U]nless the balance is strongly in favor of the defendant, the plaintiff's choice of forum should

(4:18CV508)

rarely be disturbed." *FirstMerit Corp. v. Craves*, 2015 WL 151318, at *2 (N.D. Ohio Jan. 12, 2015).

The Supreme Court has held, however, that, absent extraordinary circumstances, a plaintiff's choice of forum, and convenience of the parties are not to be considered when there exists a valid forum-selection clause. *Atl. Marine*, 134 S.Ct. at 581. When a forum-selection clause exists between the parties, it should be given "controlling weight in all but the most exceptional cases." *Id.* Additionally,

> when parties agree to a forum selection clause, they waive the right to challenge the preselected forum as inconvenient or less convenient for themselves or their witnesses, or for their pursuit of the litigation. A court accordingly must deem the private-interest factors to weigh entirely in favor of the preselected forum . . . As a consequence, a district court may consider arguments about public-interest factors only.

*Atl. Marine*, 134 S.Ct. at 582.

Defendants contend that the Southern District of California is a more appropriate forum because the alleged breaches took place in California, the evidence and witnesses are located in California, Defendants all reside in California, "the suit involves a franchise agreement that is subject to California law," and, the "California courts are likely more familiar with California franchise law." ECF No. 36 at PageID#: 1088. Furthermore, Defendants argue that the forum selection clause in the Franchise Agreement is merely permissive, not mandatory, and thus, the Court need not keep the case in order to give it effect. For the sake of efficiency, the Court addresses the latter argument first.

13

(4:18CV508)

**1. Applicability and Enforceability of the Forum Selection Clause**

"A forum selection clause is mandatory if it clearly indicates that jurisdiction is proper only in the selected forum. By contrast, a permissive forum selection clause merely authorizes jurisdiction in the specified forum, but does not require that forum to be the exclusive venue for litigation." *Braman v. Quizno's Franchise Co., LLC*, 2008 WL 611607, at *6 (N.D. Ohio Feb. 20, 2008) (citing *K & V Scientific Co. v. Bayerische Motoren Werke Aktiengesellschaft*, 314 F.3d 494, 498 (10th Cir. 2002)).

In the present case, the parties agreed that "any dispute" between Schulenburg and Handel's arising "under this agreement or any transactions concerning it," shall be heard "solely and exclusively in the federal or state courts situated in Mahoning County, Ohio." ECF No. 1. at PageID#: 6, ¶ 19. Indeed, such an action would commence either in the Mahoning County Court of Common Pleas or in the Northern District of Ohio. This unambiguous language makes clear that the parties understood that they could be haled into court in Ohio and be required to litigate there. *Cf. Braman*, 2008 WL 611607, at *6 (holding that the parties' use of the word "exclusive" meant that the forum selection clause was "explicitly mandatory, not permissive"), *with Kendle v. Whig Enter., LLC*, 2016 WL 354876, at *4 (S.D. Ohio Jan. 29, 2016) (finding a forum selection clause that stated "parties hereby consent to jurisdiction in Florida for the purposes of any litigation relating to this Agreement" to be permissive). The Court, therefore, will hold the parties to this bargain. Both Defendants Ortiz and Moonlight101, Inc. are so closely related to the dispute that it was foreseeable that they would be bound. Ortiz is Schulenburg's business partner, and both manage and operate Moonlight101, Inc. *See* ECF Nos. 23-1 at PageID#: 552 n.

14

(4:18CV508)

1 ("Ms. Ortiz attended some of Plaintiff's training sessions and interacted with Plaintiff regarding the business operation."); 30 at PageID#: 1039 ("Ms. Ortiz traveled to Ohio to attend Handel's mandatory franchise training."). The Court finds that the clause at issue is mandatory.

But even if the clause were mandatory, the Court must still decide whether the clause should be enforced. *Orthopaedic & Spine Center, LLC v. Henry*, 2017 WL 6035234, at *5 (S.D. Ohio Dec. 6, 2017). When evaluating the enforceability of a forum selection clause, courts look to the following factors: (1) whether the clause was obtained by fraud, duress, or other unconscionable means; (2) whether the designated forum would ineffectively or unfairly handle the suit; and (3) whether the designated forum would be so seriously inconvenient such that requiring the plaintiff to bring suit there would be unjust. *Wong v. PartyGaming Ltd.*, 589 F.3d 821, 825–26 (6th Cir. 2009).

Under the first factor, the party opposing the clause must show fraud in the inclusion of the clause itself. *Wong*, 589 F.3d at 828. Defendants argue that the Franchise Agreement's forum selection clause is not valid because the "forum selection clause was procured through unconscionable means due to Plaintiff's failure to adhere to California franchise law related to its disclosures and filings." ECF No. 36 at PageID#: 1085—86. Defendants do not allege that Handel's falsely represented the chosen forum, nor assert that the agreement to the forum selection clause was obtained unknowingly or unwillingly. Rather, Defendants argue general fraud. However, "[g]eneral claims of fraud [ ] do not suffice to invalidate the forum selection clause." *Wong*, 589 F.3d at 828. Therefore, Defendants have not shown the clause to be unenforceable under the first prong.

(4:18CV508)

In consideration of the remaining factors, an Ohio court is capable of effectively and fairly adjudicating Handel's state law claims, arising under Ohio law, and can effectively apply California law, if necessary. In terms of whether enforcement would deprive Defendants of a "meaningful day in court," Defendants offer little more than conclusory statements alleging that most witnesses and evidence are located in California. *See FirstMerit Corp.*, 2015 WL 151318, at *2. (explaining that when some inconvenience to either party exists, a generalized assertion by a defendant that witnesses reside in, and documents are located in, the proposed transferee district, is generally insufficient to merit transfer). And since documents requested through discovery, more likely than not, will be exchanged electronically, the impact of their location only minimally affects the burden to either party, in this regard. Defendants have failed to make a strong showing that the forum selection clause should be set aside. The Court finds that the forum selection clause is enforceable. *Wong*, 589 F.3d at 828.

The Court now turns to the public interest factors. *See Atlantic Marine*, 571 U.S. at 582 (the court need not discuss private interest factors because they are presumed to favor the preselected forum in the mandatory forum selection clause).

### 2. Public Interest Factors

Pursuant to the choice of law provision in the Franchise Agreement, the public-interest factor of having the trial in a forum that is at home with the state law that must govern the case is satisfied. In addition, Handel's is an Ohio corporation, giving Ohio its own significant interest, and Ohio public interest favors enforcing Ohio contracts as they are written. Also, Defendants' argument that California is a more appropriate forum because "California courts are likely more

16

(4:18CV508)

familiar with California franchise law" is baseless.  ECF No. 36 at PageID#: 1088.  The Court is certainly capable of applying California franchise law if it were to become necessary.  Defendants' argument to the contrary is not persuasive.

Therefore, the Court denies the motion to transfer.

### III.  Conclusion

For the reasons stated above, Defendants' Motion to Dismiss, Stay, or in the Alternative, to Transfer Venue (ECF No. 23) is denied.

IT IS SO ORDERED.

| | |
|---|---|
| June 22, 2018 | */s/ Benita Y. Pearson* |
| Date | Benita Y. Pearson |
| | United States District Judge |