# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF OHIO
### EASTERN DIVISION

| | |
|---|---|
| **HANDEL'S ENTERPRISES, INC.,** | **CASE NO. 4:18-CV-00508** |
| **Plaintiff,** | **(CONSOLIDATED WITH** |
| **-vs-** | **CASE NO. 4:18-CV-02094)** |
| | **JUDGE PAMELA A. BARKER** |
| **KENNETH S. SCHULENBURG, et al.,** | |
| **Defendants.** | **MEMORANDUM OF OPINION AND ORDER** |

This matter comes before the Court upon the parties' cross-motions for partial summary judgment. On August 30, 2019, Handel's Enterprises, Inc. ("Handel's"), Leonard Fisher ("Fisher"), and James Brown ("Brown") filed a Motion for Partial Summary Judgment on the California Franchise Investment Law ("CFIL") claims of Kenneth Schulenburg ("Schulenburg") and Moonlight101, Inc. ("Moonlight101"). (Doc. No. 72.) The same day, Schulenburg and Moonlight101 also filed a Motion for Partial Summary Judgment with respect to their CFIL claims. (Doc. No. 73.) Both motions have now been fully briefed. (Doc. Nos. 72, 73, 79-82.)

Also, currently pending is Schulenburg, Juliana Ortiz ("Ortiz"), and Moonlight101's Motion to Dissolve Injunction and Request for Evidentiary Hearing ("Motion to Dissolve Injunction"), filed on November 6, 2019. (Doc. No. 85.) Handel's filed a brief in opposition on November 20, 2019, to which Schulenburg, Ortiz, and Moonlight101 replied on November 26, 2019. (Doc. Nos. 91, 92.) The Court also granted Handel's leave to file a sur-reply, which Handel's filed on December 3, 2019. (Doc. No. 95.)

Finally, on November 12, 2019, Handel's filed a Motion to Correct the Expiration Date of the June 22, 2018 Preliminary Injunction Order ("Motion to Correct the Expiration Date"). (Doc. No.

87.)  Schulenburg, Ortiz, and Moonlight101 filed a brief in opposition on November 20, 2019, to which Handel's replied on November 27, 2019.  (Doc. Nos. 90, 93.)

For the following reasons, (1) Handel's, Fisher, and Brown's Motion for Partial Summary Judgment (Doc. No. 72) is GRANTED; (2) Schulenburg and Moonlight101's Motion for Partial Summary Judgment (Doc. No. 73) is DENIED; (3) Schulenburg, Ortiz, and Moonlight101's Motion to Dissolve Injunction (Doc. No. 85) is DENIED; and (4) Handel's Motion to Correct the Expiration Date (Doc. No. 87) is DENIED.[1]

## I.  Background

### a.  Factual Background

#### i.  Execution of the Franchise Agreement

Handel's is a nationwide franchisor and operator of ice cream parlors, with forty-seven locations in nine states.  (Doc. No. 68 at ¶¶ 1, 5.)  It is an Ohio corporation, but is registered with the California Department of Business Oversight ("DBO") and authorized to do business in the State of California.  (Doc. No. 69 at ¶ 4.)  In late March and early April 2015, Handel's submitted a proposed 2015 franchise disclosure document (the "2015 FDD") to the DBO for registration and approval.  (Doc. No. 67 at ¶ 1.)  On April 13, 2015, the DBO approved the 2015 FDD.  (*Id.* at ¶ 2.)  The 2015 FDD contains, among other things, the franchise agreement (the "Franchise Agreement") to be signed by prospective franchisees.  (*Id.* at ¶ 3.)

In October 2015, Handel's met with Schulenburg in Ohio to discuss the possibility of purchasing a Handel's franchise in the San Diego, California area.  (Doc. No. 68 at ¶ 28.)  On October

---

[1] For ease of reference, throughout the rest of the opinion, the Court will solely refer to Schulenburg for any arguments made on behalf of Schulenburg, Ortiz, or Moonlight101.  Likewise, the Court will solely refer to Handel's for any arguments made on behalf of Handel's, Fisher, or Brown.

14, 2015, Handel's provided Schulenburg with the 2015 FDD, which contained the Franchise Agreement that would govern the terms of the parties' franchisor-franchisee relationship. (Doc. No. 67 at ¶ 4.) The Franchise Agreement required franchisees to pay a $50,000 franchise fee for each franchise location, and once operational, monthly royalty payments. (Doc. No. 67-1 at 87.) On December 17, 2015, Schulenburg made a $5,000 payment to Handel's as a deposit towards the franchise fee. (Doc. No. 67 at ¶ 5.)

Meanwhile, shortly after receiving Schulenburg's initial deposit, Handel's began to seek approval from the DBO for an amendment to the 2015 FDD. As part of that process, on January 11, 2016, Handel's submitted an application to the DBO to amend the 2015 FDD, which included changes to the Franchise Agreement. (*Id.* at ¶ 6.) The purpose of the amendment was to allow Handel's franchisees to qualify for Small Business Administration ("SBA") financing. (Doc. No. 72-2 at ¶¶ 4-5.) On January 19, 2016, the DBO issued an order approving Handel's January 11, 2016 application and the amended 2015 FDD (the "Amended 2015 FDD"). (Doc. No. 67 at ¶ 8.)

On the same day that the DBO issued this approval, Schulenburg also paid the remaining $45,000 of his franchise fee. (*Id.* at ¶ 9.) Two days later, on January 21, 2016, Schulenburg met with Brown, who presented Schulenburg with a copy of the 2015 FDD—not the Amended 2015 FDD— and Schulenburg executed the Franchise Agreement contained therein. (*Id.* at ¶¶ 10-11.) At that time, Handel's did not provide the Amended 2015 FDD to Schulenburg.

On March 22, 2016, about two months after executing the 2015 FDD, Schulenburg emailed Handel's to inquire about SBA financing. (Doc. No. 67-8 at 2.) One of Handel's employees, Jody Nerone ("Nerone"), responded the same day and wrote, in relevant part, the following:

> We are not currently part of the Franchise Registry in terms of SBA financing. However, as of 1/11/2016 we have become compliant with SBA lending regulations

3

and the State of California. We have updated our FDD to reflect the changes needed to secure SBA lending. We have 1 current franchisee who already has the lending, and 1 prospective franchisee besides yourself who is securing the lending as we speak.

If you would like to proceed with it, then we will have to execute a new FDD so that you can get the lending. The document you signed when Jim was out for his visit does not meet those requirements.

(*Id.* at 1.) Later that day, Schulenburg emailed Nerone and asked, "Can you prepare the new FDD agreement and send it to me in PDF – I can print the signature page – sign it – send it back via scan copy and mail the hardcopy?" (*Id.*) On March 23, 2016, Nerone emailed the Amended 2015 FDD to Schulenburg as he requested. (*Id.*) The first page of the Amended 2015 FDD that Schulenburg received contained the following notation: "Issuance Date: 4/13/2015, as amended 1/11/2016." (*Id.* at 5.) Schulenburg never executed the Amended 2015 FDD, however, and never applied for or was denied an SBA-guaranteed loan related to any Handel's franchise location. (Doc. No. 72-2 at ¶ 8.)

### ii. Terms of the Franchise Agreement

The Franchise Agreement assigned Schulenburg a "three-mile radius surrounding the Lofts at Moonlight Beach" in Encinitas, California. (Doc. No. 1-3 at 113.) It also contemplated the grant of a second franchise location in the Gaslamp Quarter of downtown San Diego and provided Schulenburg a right of first refusal in that area for a period of two years after the execution of the Franchise Agreement. (*Id.*) The initial term of the agreement was for five years, beginning January 22, 2016 and ending January 22, 2021. (*Id.* at 82.)

With regard to Handel's confidential information, the Franchise Agreement provided the following:

You acknowledge and agree that your total knowledge of the System, and construction, operation and promotion of the Ice Cream Parlor, is derived from information we disclosed to you under this Agreement, Handel's Manuals and otherwise, and that such information is proprietary, confidential and a trade secret of

4

> Handel's. You, as franchisee and principal, jointly and severally covenant and agree that you will maintain the absolute confidentiality of all such information during and after the term of this Agreement, and not use this information in any other business or manner unless approved in writing by Handel's.

(Doc. No. 1-3 at 87.) A separate provision also required Schulenburg to keep confidential the contents of Handel's "Confidential Operations Manual," which contained the "specifications, standards and procedures" for operating a Handel's franchise. (*Id.* at 85.)

Finally, the Franchise Agreement included two non-compete provisions—one that applied during the term of the agreement and one that applied after termination. The in-term covenant not to compete provided that, during the initial term of the agreement, Schulenburg would not "directly, indirectly, or in any matter whatever, be involved with any business which is competitive with, or similar to [Handel's], in any way." (*Id.* at 86.) The post-contract covenant not to compete precluded Schulenburg from being involved in the sale of ice cream and related products and services for a period of two years after termination of the agreement in "the Territory" or "within 2 miles of any Handel's franchised or company-owned store." (*Id.* at 91.)

### iii. Dispute Over Gaslamp Quarter Location

In mid-2017, about a year and a half after Schulenburg executed the Franchise Agreement and opened his franchise in Encinitas, California, Schulenburg began to discuss the development of his second Handel's location in the Gaslamp Quarter of downtown San Diego, and chose a location at 425 Market Street, San Diego, California. (Doc. No. 68 at ¶ 100.) According to Handel's, Schulenburg refused to provide Handel's with a copy of the final lease for the Gaslamp Quarter location or pay the franchise fee. (*Id.* at ¶ 108.) Despite negotiations regarding terminating or restructuring the franchise relationship, the parties could not resolve their disagreements and litigation ensued.

### b. Procedural History[2]

On March 5, 2018, Handel's filed suit against Schulenburg, Ortiz, and Moonlight101 in this Court, asserting claims for trademark infringement, trademark dilution, false designation of origin, unfair competition, breach of contract, misappropriation of trade secrets, fraud, fraudulent concealment, conversion, declaratory judgment, and tortious interference. (Doc. No. 1.) Handel's also contemporaneously sought a preliminary injunction to prevent Schulenburg from operating an ice cream parlor at 425 Market Street, San Diego, California, which Handel's claimed would be in breach of the Franchise Agreement's covenants not to compete and would improperly use Handel's proprietary, confidential, and trade secret information. (Doc. No. 3.)

The previous judge assigned to this case, Judge Benita Pearson, held a hearing on Handel's Motion for Preliminary Injunction on May 9, 2018. At the hearing, Schulenburg's counsel informed Judge Pearson that Schulenburg had opened an independent ice cream store in the Gaslamp Quarter at 425 Market Street—Cali Cream Homemade Ice Cream ("Cali Cream")—and that it had opened after the filing of Handel's lawsuit and Motion for Preliminary Injunction. (Doc. No. 48 at 43.) On June 22, 2018, Judge Pearson granted Handel's Motion for Preliminary Injunction, finding that Handel's had a strong likelihood of success on both its trade secret and non-compete claims. (Doc. No. 42.) Consequently, Judge Pearson enjoined Schulenburg from operating any business competitive with or similar to Handel's, specifically including Cali Cream, until Schulenburg's status as a Handel's franchisee had been resolved, but no longer than January 22, 2020. (Doc. No. 43 at 3-4.) Handel's had proposed that the injunction remain in effect "no longer than the term of the parties'

---

[2] This case has an extensive procedural history, and the Court will only describe those proceedings relevant to the motions currently under consideration.

franchise relationship, which expires January 22, 2021." (Doc. No. 37 at 4.) But Judge Pearson limited it to January 22, 2020, noting that Handel's "suggested that the Order remain in effect until January 22, 2021 without adequate explanation." (Doc. No. 43 at 4 n.1.) The Sixth Circuit affirmed Judge Pearson's decision on appeal. *Handel's Enterprises, Inc. v. Schulenburg*, 765 F. App'x 117 (6th Cir. 2019).

Shortly before Handel's filed suit in this Court, Schulenburg also had initiated litigation against Handel's in California. According to Schulenburg, in January 2018, after becoming concerned with his deteriorating relationship with Handel's, he began investigating Handel's obligations under the Franchise Agreement. (Doc. No. 80-1 at ¶ 11.) As a result, he discovered that Handel's had filed an application to amend the 2015 FDD prior to his execution of the Franchise Agreement and that he had not received the correct franchise disclosure document. (*Id.*) Schulenburg then filed suit against Handel's in California state court on January 30, 2018. (Doc. No. 73-1 at 2.)[3] The case was subsequently removed to the Southern District of California and Schulenburg added Fisher and Brown as defendants. (*Id.*) Among several claims, Schulenburg alleged that Handel's violated multiple provisions of the CFIL based on Handel's failure to provide certain required disclosures while its application to amend the 2015 FDD was pending with the DBO and its failure to provide the Amended 2015 FDD to Schulenburg prior to entering into the Franchise Agreement. (*Id.*) On September 11, 2018, the Southern District of California granted in part and denied in part

---

[3] Schulenburg also filed a complaint with the DBO arising from Handel's failure to provide him with the Amended 2015 FDD. (Doc. No. 67 at ¶ 14.) On December 3, 2018, the DBO found that Handel's violated Cal. Corp. Code §§ 31119 and 31201, issued a citation against Handel's, ordered Handel's to desist and refrain from violating those sections, and assessed a $5,000 administrative penalty, plus the DBO's attorney's fees and investigative expenses. (*Id.* at ¶¶ 15-16.)

Handel's Motion to Dismiss and transferred the case to the Northern District of Ohio. (*Id.* at 25.) The case was then consolidated with Handel's action on May 1, 2019. (Doc. No. 58.)

On August 30, 2019, the parties filed cross-motions for summary judgment with respect to Schulenburg's CFIL claims. (Doc. No. 72, 73.) Handel's asserts that summary judgment in its favor is warranted because (1) Schulenburg's CFIL claims are barred by the statute of limitations, (2) Schulenburg has not demonstrated how he has been damaged by the specific CFIL violations at issue, and (3) Schulenburg has not demonstrated reasonable reliance on any of Handel's alleged misrepresentations or omissions in the 2015 FDD. (Doc. No. 72.) In contrast, Schulenburg contends he is entitled to summary judgment because Handel's has stipulated to, and does not dispute, any of the key facts upon which Schulenburg's CFIL causes of action are based. (Doc. No. 73.) In addition, Schulenburg asserts that Handel's violations were willful, which entitles Schulenburg to rescission of the Franchise Agreement under the CFIL. (*Id.*) Both motions have been fully briefed. (Doc. Nos. 72, 73, 79-82.)

Subsequently, on November 6, 2019, Schulenburg moved to dissolve the preliminary injunction issued by Judge Pearson, claiming that evidence developed during discovery demonstrates the preliminary injunction had been improvidently granted. (Doc. No. 85.) Shortly thereafter, on November 12, 2019, Handel's filed its Motion to Correct the Expiration Date. (Doc. No. 87.) Handel's claims that the preliminary injunction—currently set to expire on January 22, 2020—should be extended to January 22, 2021 in order to align the injunction with the expiration of the initial term of the Franchise Agreement. Each of these motions have been fully briefed as well. (Doc. Nos. 85, 87, 90-93, 95.)

## II.  Cross-Motions for Partial Summary Judgment on Schulenburg's CFIL Claims

### a.  Standard of Review

Summary judgment is proper "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  "A dispute is 'genuine' only if based on evidence upon which a reasonable jury could return a verdict in favor of the non-moving party."  *Henderson v. Walled Lake Consol. Sch.*, 469 F.3d 479, 487 (6th Cir. 2006).  "Thus, 'the mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff.'"  *Cox v. Kentucky Dep't of Transp.*, 53 F.3d 146, 150 (6th Cir. 1995) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986)).  A fact is "material" only "if its resolution might affect the outcome of the suit under the governing substantive law."  *Henderson*, 469 F.3d at 487.

At the summary judgment stage, "[a] court should view the facts and draw all reasonable inferences in favor of the non-moving party."  *Pittman v. Experian Info. Solutions, Inc.*, 901 F.3d 619, 628 (6th Cir. 2018).  In addition, "the moving party bears the initial burden of showing that there is no genuine dispute of material fact."  *Ask Chems., LP v. Comput. Packages, Inc.*, 593 F. App'x 506, 508 (6th Cir. 2014).  The moving party may satisfy this initial burden by "identifying those parts of the record which demonstrate the absence of any genuine issue of material fact."  *Lindsey v. Whirlpool Corp.*, 295 F. App'x 758, 764 (6th Cir. 2008).  "[I]f the moving party seeks summary judgment on an issue for which it does not bear the burden of proof at trial," the moving party may also "meet its initial burden by showing that 'there is an absence of evidence to support the nonmoving party's case.'"  *Id.* (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986)).  Once the moving party satisfies its burden, "the burden shifts to the non-moving party who must then point

to evidence that demonstrates that there is a genuine dispute of material fact for trial." *Ask Chems.*, 593 F. App'x at 508-09. "[T]he nonmoving party may not simply rely on its pleading, but must 'produce evidence that results in a conflict of material fact to be solved by a jury.'" *MISC Berhad v. Advanced Polymer Coatings, Inc.*, 101 F. Supp. 3d 731, 736 (N.D. Ohio 2015) (quoting *Cox*, 53 F.3d at 150).

### b. Analysis

The parties have moved for summary judgment with respect to Schulenburg's first and second causes of action, which allege that Handel's violated multiple provisions of the CFIL. (Doc. No. 69 at 10-15.) Generally, the intent of the CFIL is "to provide each prospective franchisee with the information necessary to make an intelligent decision regarding franchises being offered . . . to prohibit the sale of franchises where the sale would lead to fraud or a likelihood that the franchisor's promises would not be fulfilled, and to protect the franchisor and franchisee by providing a better understanding of the relationship between the franchisor and franchisee with regard to their business relationship." Cal. Corp. Code § 31001. In support of this goal, the CFIL requires a franchisor to file an application for registration of an offer of a franchise with the DBO, including a proposed franchise disclosure document, before offering a franchise for sale. Cal. Corp. Code §§ 31110, 31111, 31114. Once approved, the franchise offering is valid for a period of one year from the effective date of the registration. Cal. Corp. Code § 31120.

In Schulenburg's first cause of action, he asserts that Handel's violated two CFIL provisions related to the amendment of a franchisor's franchise disclosure document. (Doc. No. 69 at 10-12.) Pursuant to CFIL § 31123, "[a] franchisor shall promptly notify the commissioner in writing, by an application to amend the registration, of any material change in the information contained in the

application as originally submitted, amended or renewed." Cal. Corp. Code § 31123. Relatedly, CFIL § 31107 provides an exemption from the disclosure requirements for "any offer (but not the sale) by a franchisor of a franchise" made "while an application for renewal or amendment is pending" as long as the prospective franchisee receives all of the following:

(a) The franchise disclosure document and its exhibits as filed with the commissioner with the application for renewal or amendment.

(b) A written statement from the franchisor that (1) the filing has been made but is not effective, (2) the information in the franchise disclosure document and exhibits has not been reviewed by the commissioner, and (3) the franchisor will deliver to the prospective franchisee an effective franchise disclosure document and exhibits at least 14 days prior to execution by the prospective franchisee of a binding agreement or payment of any consideration to the franchisor, or any person affiliated with the franchisor, whichever occurs first, showing all material changes from the franchise disclosure document and exhibits received by the prospective franchisee under subdivision (a) of this section.

(c) The franchise disclosure document and exhibits in accordance with paragraph (3) of subdivision (b) of this section.

Cal. Corp. Code § 31107. Schulenburg asserts that Handel's violated §§ 31123 and 31107 when it continued with the offer and sale of the franchise to Schulenburg in January 2016 while Handel's application to amend the 2015 FDD was pending with the DBO without providing any of the disclosures required by § 31107. (Doc. No. 69 at 10-12; Doc. No. 73 at 10-11.)

In Schulenburg's second cause of action, he alleges that Handel's violated CFIL §§ 31119 and 31107. (Doc. No. 69 at 13-15.) Section 31119(a) requires a franchisor to provide a prospective franchisee with a copy of the franchise disclosure document "at least 14 days prior to the execution by the prospective franchisee of any binding franchise or other agreement, or at least 14 days prior to the receipt of any consideration, whichever occurs first." Cal. Corp. Code § 31119(a). Similarly, § 31107(b) requires delivery of "an effective franchise disclosure document and exhibits at least 14

days prior to execution by the prospective franchisee of a binding agreement or payment of any consideration to the franchisor, or any person affiliated with the franchisor, whichever occurs first, showing all material changes from the franchise disclosure document and exhibits received by the prospective franchisee under subdivision (a) of this section." Cal. Corp. Code § 31107(b). Schulenburg contends that when the DBO approved the Amended 2015 FDD on January 19, 2016, it became the only effective franchise disclosure document for Handel's. (Doc. No. 69 at 14; Doc. No. 73 at 12.) As a result, Schulenburg claims Handel's violated both of the above provisions when it failed to provide Schulenburg with a copy of the Amended 2015 FDD prior to executing the Franchise Agreement on January 21, 2016. (Doc. No. 69 at 14; Doc. No. 73 at 12.)

Handel's largely admits that its actions violated the CFIL. (Doc. No. 79 at 1.) However, in its Motion for Partial Summary Judgment, Handel's argues that Schulenburg's claims still fail for several reasons. In particular, as noted above, Handel's asserts (1) Schulenburg's CFIL claims are barred by the statute of limitations, (2) Schulenburg has not demonstrated how he has been damaged by the specific CFIL violations at issue, and (3) Schulenburg has not demonstrated reasonable reliance on any of Handel's alleged misrepresentations or omissions in the 2015 FDD. (Doc. No. 72.) The Court finds that Handel's is entitled to summary judgment on Schulenburg's CFIL claims because Schulenburg has failed to demonstrate any damages caused by Handel's violations.

Handel's argues that Schulenburg's claims fail because he has not alleged that any damages resulted from Handel's violations of the CFIL. (Doc. No. 72-1 at 22-24.) Handel's asserts a showing of damages is a prerequisite to a claim for rescission. (*Id.*) In response, Schulenburg claims the language of the CFIL does not require a showing of damages in order to obtain rescission and that

Schulenburg has shown he is entitled to restitution of certain benefits and compensatory damages. (Doc. No. 80 at 12-14; Doc. No. 81 at 5-7.)

CFIL § 31300 provides that any person who violates certain provisions of the CFIL "shall be liable to the franchisee or subfranchisor, who may sue for damages caused thereby, and if the violation is willful, the franchisee may also sue for rescission." Cal. Corp. Code § 31300. The parties dispute the meaning of this language. Handel's argues that this phrasing unambiguously provides that rescission is an additional remedy available for a CFIL violation if the violation is willful, but does not dispense with the requirement to establish that the CFIL violation caused damage. (Doc. No. 82 at 12.) Handel's asserts use of the word "also" in the statute would be superfluous if the statute was interpreted to mean that a willful violation alone, without a showing of damages, entitled the plaintiff to rescission. (*Id.*) In response, Schulenburg contends that the language of § 31300 does not require a showing of damages in order to obtain rescission. (Doc. No. 81 at 5-6.) Rather, rescission is an additional remedy available upon a showing of "willfulness." (*Id.*)

The only case cited by either party that directly addresses this issue is an unpublished California Court of Appeal decision.[4] In that case, the plaintiff brought a class action against defendants for violations of the CFIL. *DT Woodard, Inc. v. Mail Boxes Etc., Inc.*, No. B194599, 2007 WL 3018861, at *1, *5 (Cal. Ct. App. Oct. 17, 2007). The plaintiff sought rescission of the class members' contracts and argued that "section 31300 does not require proof that the franchisee

---

[4] The Court is aware that "an unpublished California Court of Appeals case [has] no precedential value." *Farley v. Country Coach, Inc.*, 550 F. Supp. 2d 689, 695 n.3 (E.D. Mich. 2008); Cal. R. Ct. 8.1115 ("[A]n opinion of a California Court of Appeal or superior court appellate division that is not certified for publication or ordered published must not be cited or relied on by a court or a party in any other action."). However, federal courts "may cite unpublished California appellate decisions as persuasive authority." *Washington v. Cal. City Corr. Ctr.*, 871 F. Supp. 2d 1010, 1028 n.3 (E.D. Cal. May 10, 2012).

13

relied on defendants [sic] violations of the CFIL and that such violations caused damages." *Id.* at *7.

Interpreting the language of § 31300, the court rejected the plaintiff's argument. The court noted that

the statute's wording—"shall be liable to the franchisee or subfranchisor, who may sue *for damages*

*caused thereby*, and if the violation is willful, the franchisee may *also* sue for rescission"—contains

"express causation language." *Id.* (quoting Cal. Corp. Code § 31300). According to the court, that

language has two consequences. *Id.* "First, reliance is an element of causation." *Id.* More relevant

here, however, is the second consequence the Court discussed:

> Second, a franchisee suing for the additional remedy of rescission must also prove that
> the statutory violation is "willful." This additional element is necessary to obtain
> rescission, however, does not dispense with a showing of reliance and causation; to
> obtain the rescission remedy, the plaintiff must prove that the violation is "willful" in
> addition to showing that plaintiff relied on the statutory violation in entering the
> contract and that the violation caused damages. If this were not the case, a "willful"
> statutory violation would give the plaintiff the opportunity to rescind, even if the
> franchisee did not rely on the franchisor's violation and even if the franchisor's
> violation caused no harm to plaintiff franchisee. It is illogical to condition the more
> expansive remedy of rescission (which includes restitution of benefits conferred by
> the contract, and which is not inconsistent with a claim for damages, according to Civil
> Code section 1692) on a lesser quantum of proof. To obtain the greater remedy of
> rescission should require plaintiff to prove everything necessary to obtain the lesser
> remedy of damages, as well as the "willful" violation of the statute.

*Id.* at *8.

The Court finds the reasoning of *DT Woodard* persuasive. The language of the statute, which

provides that a plaintiff "may sue *for damages caused thereby*, and if the violation is willful, the

franchisee may *also* sue for rescission," Cal. Corp. Code § 31300, indicates that rescission is an

additional remedy that is available only if the plaintiff first establishes that the violation damaged the

plaintiff. In addition, the opposing interpretation advocated for by Schulenburg would give the

plaintiff the opportunity to rescind a franchise agreement based on a willful violation without the

need to show that the violation ever damaged the plaintiff. This is a perverse result, especially in a

situation where a plaintiff seeks to rescind an agreement that has been in place for years based on a statutory violation that did not harm the plaintiff in any way. It is illogical to provide such a drastic remedy without requiring a showing of damages.

Schulenburg argues that Cal. Civil Code § 1692—which applies to rescission claims under the CFIL and provides that "[a] claim for damages is not inconsistent with a claim for relief based upon rescission"—supports his interpretation of the statute because it shows damages are not a required element of a rescission claim, but rather a remedy available in addition to rescission. (Doc. No. 81 at 5-6.) Although the principles in Cal. Civil Code § 1692 may apply to a rescission claim under the CFIL, it does not address whether a plaintiff is entitled to rescission under § 31300 of the CFIL in the first place. Thus, the Court finds his argument unpersuasive. Accordingly, the Court finds that § 31300 requires a plaintiff to prove that the defendant's CFIL violation damaged the plaintiff *and* that the violation was willful in order to obtain rescission.

In this case, Schulenburg has not demonstrated that Handel's CFIL violations caused any damages. Schulenburg's Second Amended Complaint contains only conclusory allegations regarding damages caused by Handel's violations. (*See* Doc. No. 69 at ¶¶ 58, 60, 71.) Schulenburg also has not articulated any way in which Handel's violations damaged him in response to Handel's Motion for Partial Summary Judgment, as Schulenburg does not claim that Handel's failure to provide the required disclosures under § 31107 or its failure to provide the Amended 2015 FDD prior to the execution of the Franchise Agreement harmed him in any way. Indeed, Schulenburg offers no evidence that he was prejudiced by the two-month delay between executing the 2015 FDD and receiving the Amended 2015 FDD, which differed solely with respect to a franchisee's ability to obtain SBA financing.

Instead, in conclusory fashion, Schulenburg asserts that he is entitled to compensatory damages for attorneys' fees and lost profits and rent for his Cali Cream store and that he is "entitled to restitution of the following damage amounts, all of which Mr. Schulenburg has incurred as result of Handel's statutory violations: (a) return of the $50,000 franchise fee paid to Handel's pursuant to the illegal franchise agreement; (b) return of the $288,320 in royalties paid to Handel's from 2016 to date pursuant to the illegal franchise agreement; [and] (c) reimbursement for more than $310,758 for the cost and expense of designing, equipping and opening the Encinitas franchise." (Doc. No. 80 at 13.) These statements provide no explanation, however, as to how any of these damage amounts were caused by, related to, or connected in any way to Handel's violations of the CFIL as required by § 31300. Accordingly, Schulenburg has failed to establish that he has been damaged by Handel's statutory violations, and Handel's is entitled to summary judgment on Schulenburg's claims under the CFIL.

As a result, the Court need not discuss the other arguments contained in Handel's and Schulenburg's respective Motions for Partial Summary Judgment. Handel's Motion for Partial Summary Judgment is granted, and Schulenburg's Motion for Partial Summary Judgment is denied.

## III.    Schulenburg's Motion to Dissolve the Preliminary Injunction

Schulenburg has moved to dissolve the preliminary injunction previously put in place by Judge Pearson on the basis that subsequent discovery demonstrates the injunction was improvidently granted and that the Court failed to address several legal issues surrounding the enforceability of the Franchise Agreement's non-compete provisions. (Doc. No. 85.) Schulenburg requests that the Court hold an evidentiary hearing to evaluate whether the injunction should remain in effect. (*Id.*) Handel's opposes Schulenburg's motion and argues that Schulenburg has not demonstrated any changes in the

facts, the law, or circumstances that would warrant dissolving the injunction.  (Doc. No. 91.)  The Court finds that dissolving the preliminary injunction is not appropriate at this time.

"The power to modify or dissolve injunctions springs from the court's authority 'to relieve inequities that arise after the original order.'"  *Gooch v. Life Investors Ins. Co. of Am.*, 672 F.3d 402, 414 (6th Cir. 2012) (quoting *Credit Suisse First Bos. Corp. v. Grunwald*, 400 F.3d 1119, 1124 (9th Cir. 2005)).  However, such judicial intervention should be "guarded carefully."  *Id.*  Accordingly, "[t]o obtain modification or dissolution of an injunction, a movant must demonstrate significant 'changes in fact, law, or circumstance since the previous ruling.'"  *Id.* (quoting *Gill v. Monroe Cty. Dep't of Soc. Servs.*, 873 F.2d 647, 648-49 (2d Cir. 1989)).  The Sixth Circuit has held that "[n]ewly discovered evidence can be the basis for a motion to modify," but "that to so qualify, the new evidence must not have been 'in existence before the original' injunction was issued."  *Id.* (citations omitted).  In other words, "[i]t is not enough that the party was merely previously unaware of evidence's existence; the evidence must not have been 'reasonably discoverable by due diligence during the original proceeding.'"  *Id.* at 415 (citations omitted).[5]

In *Gooch*, applying this standard, the Sixth Circuit held that the defendant had not brought a proper motion for dissolution in the district court because it failed to argue that circumstances had changed.  *Id.* at 415-16.  Instead, the defendant attempted to assert "that evidence previously in existence, but not previously considered by the district court, significantly impacts the preliminary

---

[5] Schulenburg cites several cases for the proposition that it is commonplace for courts to consider motions to modify or dissolve preliminary injunctions after discovery has occurred.  (Doc. No. 92 at 4.)  However, only one of these cases is from the Sixth Circuit, and none of them call into doubt the standard described above.  For example, the sole case from the Sixth Circuit addressed the unrelated question of whether a district court had continuing jurisdiction pursuant to an agreed order of the parties.  *See Associated Gen. Contractors of Am. v. City of Columbus*, 172 F.3d 411, 412-14 (6th Cir. 1999).

injunction analysis." *Id.* at 416. The Sixth Circuit noted the defendant's frustration with the district court's pre-injunction limitations on discovery, but held that "pre-injunction limitations on discovery cannot transform prior existing, but undiscovered, facts into 'new evidence.'" *Id.*

Here, Schulenburg has failed to describe any new evidence with regard to either Handel's trade secrets claims or Handel's claims based on the non-compete provisions in the Franchise Agreement. Schulenburg asserts that discovery has confirmed that he is not using any of Handel's trade secrets in operating Cali Cream and that the non-compete provisions in the Franchise Agreement do not apply to his operation of Cali Cream. (Doc. No. 85 at 10, 15.) But all of the evidence he cites in support of these arguments was available at the time of the original preliminary injunction hearing before Judge Pearson. For example, much of the evidence Schulenburg relies on relates to a comparison of the operations of his Cali Cream store and Handel's. (*Id.* at 10-12.) However, Cali Cream was already operating at the time the injunction was issued (Doc. No. 48 at 43), and the same information could have been discovered at that time. As in *Gooch*, the Court recognizes Schulenburg's frustration with the limited discovery permitted before the preliminary injunction was issued, but this does not change the fact that he has not identified any "new evidence" that warrants dissolving the preliminary injunction.

Schulenburg also has not pointed to any changes in the law. Schulenburg does make several legal arguments as to why the injunction should be lifted, such as asserting that the Franchise Agreement is subject to California law under which non-compete provisions are not enforceable. (Doc. No. 85 at 13-15.) However, Schulenburg does not contend that the relevant law has changed since the preliminary injunction ruling. Each of these arguments were or could have been raised

before the preliminary injunction was issued. As such, the Court finds that these issues do not meet the standard for dissolving a preliminary injunction.

Finally, Schulenburg claims that "Handel's has weaponized the preliminary injunction by racing to open two stores on Mr. Schulenburg's doorstep in an effort to undermine and harm his Encinitas franchise." (Doc. No. 85 at 18.) Specifically, Schulenburg asserts that, since Judge Pearson entered the preliminary injunction in this case, Handel's has opened another franchise in Carlsbad, California—which is eight miles away from his franchise—and is planning to open another franchise in Del Mar, California—which is seven miles away from his franchise. (*Id.* at 5.) According to Schulenburg, he had previously shared with Handel's his desire to open new franchises in specific communities in San Diego County, and Handel's falsely represented to him that he would be given a territory agreement providing him with rights in additional territories in San Diego County. (*Id.* at 6-7.) He asserts Handel's has therefore come to the Court with unclean hands and the injunction should be dissolved. (*Id.* at 18.)[6] Handel's responds by arguing that Schulenburg knew of the plans to open the Carlsbad location before the preliminary injunction hearing, that the opening of these locations is consistent with Handel's regular growth strategy, and that the opening of these locations does not violate the Franchise Agreement because Schulenburg was only granted a three-mile radius surrounding his Encinitas franchise. (Doc. No. 91 at 11-13.)

The Court finds that Schulenburg has failed to demonstrate that Handel's actions necessitate dissolving the preliminary injunction. Schulenburg does not cite any authority in support of his unclean hands argument, and the Court is not convinced that Handel's has acted in bad faith by

---

[6] Schulenburg's additional allegations regarding Handel's actions contributing to its unclean hands existed at the time of the preliminary injunction hearing and, if not actually known by Schulenburg then, were discoverable at that time and thus cannot form the basis to dissolve the injunction.

opening new franchises in a way that comports with Schulenburg's territory under the Franchise Agreement. *See Oak Rubber Co. v. Bank One, N.A.*, 214 F. Supp. 2d 820, 833 (N.D. Ohio 2002) ("Ohio law is crystal clear that an actor does not act in 'bad faith' when it decides to enforce its contractual rights.").

## IV. Handel's Motion to Correct the Expiration Date of the Preliminary Injunction

Handel's has moved to correct the expiration date of the preliminary injunction to January 22, 2021, which it claims is necessary to align the preliminary injunction with the expiration of the initial term of the Franchise Agreement. (Doc. No. 87.) Handel's contends this was the intent of the preliminary injunction, but that it failed to make a sufficient connection between the date it proposed to Judge Pearson and the Franchise Agreement's expiration date. (Doc. No. 93 at 4-5.) Schulenburg opposes Handel's motion for a variety of reasons. (Doc. No. 90.) Specifically, Schulenburg asserts that subsequent discovery has confirmed that the preliminary injunction was improvidently granted and should be dissolved immediately, that the injunction should not be extended until an evidentiary hearing is held, that there is no evidence that Judge Pearson did not simply reject Handel's argument tying the expiration date to the Franchise Agreement, and that Handel's request is procedurally improper because it recently transferred its interest in the Franchise Agreement to a separate corporate entity. (*Id.*) The Court addresses these issues below.

First, in its opposition to Handel's Motion to Correct the Expiration Date, Schulenburg informed the Court that Handel's Enterprises, Inc. no longer exists and has transferred its interests in the Franchise Agreement to Handel's Enterprises, LLC. (Doc. No. 90 at 3.) As a result, Schulenburg argues that Handel's motion is procedurally improper and that this transfer may have violated the Franchise Agreement, may require the substitution of parties, calls into question the validity of the

existing preliminary injunction and the related bond, counsels against extending the injunction, and provides another reason to hold an evidentiary hearing. (*Id.* at 3-5.) In response, Handel's asserts its conversion to a Delaware limited liability company ("LLC") has no effect on this litigation because Handel's Enterprises, LLC is deemed to be the same entity as Handel's Enterprises, Inc., the conversion had no effect on Handel's property or any of its causes of action, that Fed. R. Civ. P. 25(c) permits this action to continue unaffected, that the conversion did not violate the Franchise Agreement, and that the bond submitted by Handel's in conjunction with the existing preliminary injunction is still valid. (Doc. No. 93 at 6-10.) Schulenburg cites no authority in support of his arguments, and the Court concludes that Handel's conversion to an LLC has no effect on this action.

Next, Handel's asserts that Judge Pearson would have extended the preliminary injunction to January 22, 2021—rather than January 22, 2020—had Handel's more clearly articulated the fact that the Franchise Agreement's initial term and Schulenburg's status as a franchisee would expire on January 22, 2021. (Doc. No. 93 at 4-5.) Thus, Handel's believes the Court need only correct the preliminary injunction's expiration date to this new date. In opposition, Schulenburg contends that there is no evidence that Judge Pearson misunderstood Handel's argument when she set the expiration date for the preliminary injunction and that Judge Pearson purposely limited the length of the injunction so that it would not extend indefinitely. (Doc. No. 90 at 2-3.) The Court largely agrees with Schulenburg's position.

In Handel's proposed order for the existing preliminary injunction, it specifically proposed that the preliminary injunction remain in effect "no longer than the term of the parties' franchise relationship, which expires January 22, 2021." (Doc. No. 37 at 4.) Thus, Judge Pearson was clearly aware that the January 22, 2021 date was connected to the expiration of the franchise relationship

21

between Handel's and Schulenburg. Despite that proposal, Judge Pearson modified this language when she issued the preliminary injunction and extended it only until January 22, 2020. (Doc. No. 43 at 4.) Judge Pearson provided in a footnote that "Plaintiff suggested that the Order remain in effect until January 22, 2021 without adequate explanation." (*Id.* at 4 n.1.) The Court is unwilling to assume that Judge Pearson did not understand Handel's reasoning or that she was not aware of the significance of the proposed date. Thus, the Court will treat Handel's Motion as a request to modify the preliminary injunction—rather than a request to simply "correct" the expiration date.

Alternatively, Handel's asserts that it has satisfied the standard for modifying the preliminary injunction. (Doc. No. 90 at 1-2; Doc. No. 93 at 11-12.) The Court disagrees and will thus deny Handel's Motion. Handel's contends that the same standard from *Gooch*, described above, applies to its request to extend the preliminary injunction, such that a change in circumstances is sufficient to prolong the enforcement of the preliminary injunction. (Doc. No. 93 at 11-12.) The Court is not convinced that this same standard applies to extending a preliminary injunction past its original expiration date. In *Gooch*, the Sixth Circuit addressed the defendant's motion to dissolve a preliminary injunction—not a motion to extend a preliminary injunction beyond its original limits. 672 F.3d at 414. The preliminary injunction entered by Judge Pearson earlier in this case is set to expire on January 22, 2020. Handel's seeks to extend that date, which is essentially a request that the Court enter a new preliminary injunction.

In determining whether such an extension is appropriate, it appears that courts apply the same standard used to assess whether to grant a preliminary injunction in the first instance. Indeed, "[w]hen modifying a preliminary injunction, a court is charged with the exercise of the same discretion it exercised in granting or denying injunctive relief in the first place." *Yolton v. El Paso Tenn. Pipeline*

*Co.*, No. 02-75164, 2007 WL 3037709, at *2 (E.D. Mich. Oct. 17, 2007) (quoting *Sierra Club v. United States Army Corp of Eng'rs*, 732 F.2d 253, 256 (2d Cir. 1984)). Thus, in *Monsanto Co. v. Manning*, the Sixth Circuit analyzed the same four factors that must be considered "when a claim for injunctive relief is presented" when "reviewing a district court's order denying extension of a preliminary injunction" until trial. No. 87–1790, 1988 WL 19169, at *3 (6th Cir. Mar. 8, 1988); *see also Yolton*, 2007 WL 3037709, at *2-4 (assessing the preliminary injunction factors before granting a motion to extend a preliminary injunction to an additional category of individuals in a certified class). Accordingly, the Court will apply the same standard for granting an initial preliminary injunction to Handel's Motion to Correct the Expiration Date.

"In general, courts must examine four factors in deciding whether to grant a preliminary injunction: (1) whether the movant has demonstrated a substantial likelihood of success on the merits, (2) whether the movant will suffer irreparable injury absent injunction, (3) whether a preliminary injunction would cause substantial harm to others, and (4) whether the public interest will be served by an injunction." *Flight Options, LLC v. Int'l Bhd. of Teamsters, Local 1108*, 863 F.3d 529, 539-40 (6th Cir. 2017). "These factors are not prerequisites, but are factors that are to be balanced against each other." *Overstreet v. Lexington-Fayette Urban Cty. Gov't*, 305 F.3d 566, 573 (6th Cir. 2002). However, "a finding that there is simply no likelihood of success on the merits is usually fatal." *Gonzales v. Nat'l Bd. of Med. Exam'rs*, 225 F.3d 620, 625 (6th Cir. 2000). In addition, "[a] preliminary injunction is an extraordinary remedy which should be granted only if the movant carries his or her burden of proving that the circumstances clearly demand it." *Overstreet*, 305 F.3d at 573.

In this case, Handel's has not met its burden of proving that extension of the preliminary injunction is clearly warranted. In its Motion to Correct the Expiration Date, Handel's asserts that it

would suffer irreparable harm absent extension of the preliminary injunction, but fails to address any of the other factors that courts must consider when deciding whether to grant a preliminary injunction, including its continuing likelihood of success on the merits of its trade secret and non-compete claims. (Doc. No. 87 at 7-10.) As a result, the Court denies Handel's request to extend the expiration date of the preliminary injunction, without prejudice to Handel's bringing a properly supported motion that addresses the four factors noted above.

## V. Conclusion

For the reasons set forth above, (1) Handel's, Fisher, and Brown's Motion for Partial Summary Judgment (Doc. No. 72) is GRANTED; (2) Schulenburg and Moonlight101's Motion for Partial Summary Judgment (Doc. No. 73) is DENIED; (3) Schulenburg, Ortiz, and Moonlight101's Motion to Dissolve Injunction (Doc. No. 85) is DENIED; and (4) Handel's Motion to Correct the Expiration Date (Doc. No. 87) is DENIED.

**IT IS SO ORDERED.**


  *s/Pamela A. Barker*
  PAMELA A. BARKER
Date: January 6, 2020          U. S. DISTRICT JUDGE